UNION SECURITIES COMPANY *v.* TAYLOR.

Opinion delivered May 2, 1932.

W. J. *Dungan,* for appellant.

*Walter Killough,* for appellee.

MEHAFFY, J. Appellee brought suit in the Woodruff Circuit Court against the appellant for damages for killing a mule. He alleged that one of appellant's trucks negligently ran over and killed his mule of the value of $250. The appellant denied all the allegations of the complaint.

Fred Swindle testified that some time in January, 1930, a truck of the Dixie Plantation killed a mule belonging to the appellee. Witness was coming from Wynne and saw the truck; he had trailed behind the truck for some distance, and the truck was going from 40 to 45 miles an hour. There was a negro in front of the truck and a man on the inside. He saw the name "Dixie Plantation" on the truck. Witness tried to pass them but was unable to do so. Witness was with appellee when he talked to Gordon, the manager, about the accident.

Gordon said the court would have to settle it, and then later told Mr. Taylor that he would let him know in a few days; he talked favorably about making the settlement. He said something about his truck being in Memphis, and he went back and looked and then said he must have made a mistake, and told Mr. Taylor that he would hear from him in a few days. He did not say who was driving the truck, but Gordon asked witness to look at a big negro, but he could not identify him.

Wesley Bostick testified that he knew the mule that was killed and that it was Mr. Taylor's. He saw it the

next morning. The mule was dragged about 150 or 200 feet. The market value of the mule was $175. Saw the truck and it had "Dixie Plantation" on it. One of the men in the truck was a negro. Went with Taylor to see Mr. Gordon, and Gordon said his truck had not been out. He then went back and looked at his book, and said his truck went to West Memphis. They talked about settlement, but did not agree on a price.

Sam Hunt saw the truck and saw the dead mule; knew it was Taylor's mule, and heard it when the truck hit the mule. The mule was dragged 100 or 150 yards.

Oscar Neal testified that he saw "Dixie Plantation" on the truck.

Isom Maxwell also saw the mule; saw broken glass, and it looked like the mule was hit by a car or truck.

G. G. Doris knew the mule and fixed its value at $125.

The appellee testified that his mule was killed just east of Rolfe School House on Highway No. 64, in Cross County. It was dragged about 100 or 150 feet; went down to the Dixie Plantation to see about it. One time Wesley Bostick went with him and another time Sam Hunt. Fred Swindle went with him once. Talked with the manager, Gordon, and Gordon told him he had a truck with "Dixie Plantation" on it, and did not know of any other truck with that sign. He told appellee that he sent his truck to West Memphis, and he promised to pay for the mule but never did.

C. S. Gordon for defendant testified that he was manager of the Dixie Plantation, which was operated by the Union Securities Company, a corporation; knew nothing about the killing of the mule; that their truck was over there on Christmas day, and that that was the only trip it made; that he let a man, Hardin Mahan, have his truck to move his household goods to some place east of Memphis, and that he made Mahan a price and he paid it, and that Mahan picked up a boy to bring the truck back; that witness could not send any. Mahan intended to do his own driving and come back and get another load. He did not know the negro boy had gone

with him; did not send him; he did not tell anybody he sent a load of negroes to Memphis; told them he sent the truck over with a fellow to move his family; rented him the truck; did not tell Fred Swindle and Mr. Taylor that the truck was out on the day the mule was killed; that Swindle and Taylor were mistaken about it; that the negro boy that Mahan got to go and bring the truck back lives on Gordon's place; told Taylor that, if they were liable, they would pay for the mule, and told Taylor he would let him know.

There was a verdict and judgment for $125, and the case is here on appeal.

The only question in the case is whether there was sufficient evidence to sustain the verdict of the jury.

Appellant contends that the evidence is not sufficient to show negligence on the part of the driver of the truck.

To constitute actionable negligence, there must be, not only lack of care, but such lack of care must involve a breach of some duty owed to the person injured. In other words, negligence is the failure to do something that a person of ordinary prudence would do, or the doing of something that a person of ordinary prudence would not do under the circumstances.

Our statute provides that no person shall drive a motor vehicle upon a public highway at a greater speed than is reasonable and proper, and that, if the rate of speed of any motor vehicle operated on the public highway exceeds 20 miles an hour for a distance of ¼ of a mile, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is going at a greater speed than is reasonable.

The violation of the statute is merely evidence of negligence, and is not conclusive. *Pollock* v. *Hamm,* 177 Ark. 348, 6 S. W. ('2d) 541; *Fields* v. *Freeman,* 177 Ark. 807, 8 S. W. (2d) 436.

While the violation of the statute is merely evidence of negligence, this court has held that one of the purposes of the statute is to prevent accidents and preserve persons from injury. *White* v. *State,* 164 Ark. 517, 262 S.

W. 338. The evidence in this case shows that the truck, at the time of the accident, was going 40 or 45 miles an hour. This evidence is not disputed. Neither the driver of the truck nor the person who was with him testified in the case. Not only does the undisputed evidence show that the truck was going 40 or 45 miles an hour, but it also shows that the mule was dragged a considerable distance.

The jury were justified in concluding from this evidence that the driver of the truck was guilty of negligence.

In testing the legal sufficiency of the evidence to support the verdict, it must be considered in the light most favorable to the appellee.

It is contended also by the appellant that the undisputed evidence is to the effect that the men in charge of the truck were not employees or servants of appellant, but that Mahan solely was responsible for the driving of the truck at the time. Three or four witnesses testified that Gordon, the manager, stated that he had sent his truck over there. He first stated to the witnesses that it was not appellant's truck, but, after going back and looking at his books, he said that appellant's truck was over there at the time. Gordon denies making these statements, but this was a question of fact for the jury.

He says that the negro boy went with Mahan to bring the truck back, but at the time they took the truck over Mahan was to come back after a second load. If this were true, there would be no reason for the negro to go to bring the truck back, and if the manager's testimony is true, there would be no reason for his going at all.

At least three of the witnesses who testified about what Gordon said were disinterested witnesses. Neither the negro nor Mahan testified.

We think the evidence is sufficient to justify the jury in finding that at the time of the accident the persons in charge of the truck were employees of appellant, and whether they were or not was a question of fact for the jury, to be determined from the evidence.

We find no error, and the judgment is affirmed.