Chicago, Rock Island & Pacific Railway Company *v.* King.

4-8019                                    197 S. W. 2d 931

Opinion delivered December 9, 1946.

*Thos. S. Buzbee* and *A. S. Buzbee,* for appellant.

*Chas. X. Williams* and *Paul X. Williams,* for appellee.

MINOR W. MILWEE, Justice. Appellee, Simon King, brought this action in the Yell Circuit Court, Danville District, against appellants, Chicago, Rock Island & Pacific Railway Co. and Larry Smith, train conductor, to recover damages for personal injuries which appellee sustained in a fall from one of the railway company's passenger trains on July 1, 1945.

Appellee alleged in his complaint that, while riding as a fare paying passenger on a train of the company traveling west from Little Rock, Arkansas, he had no seat and an agent of the railroad company in the operation of the train negligently directed him to sit upon a step stool near an opening in the baggage car; that while the train was being operated at a speed of approximately 60 miles an hour out of a curve, appellee was thrown from the baggage car and sustained severe personal

injuries. It was also alleged that, although the trainmen were immediately notified of the accident, they negligently failed to stop the train or render any assistance to appellee.

The answer of appellants contained a general denial and a plea that any injuries sustained by appellee were the result of his own negligence. Trial to a jury resulted in a verdict and judgment for appellee against the railway company for $5,000.

Appellants urge two assignments of error by the trial court: (1) that appellants' request for a directed verdict should have been granted, and (2) that the verdict is excessive.

In determining whether the trial court erred in its refusal to direct a verdict for appellants, we give the evidence its strongest probative force in support of the verdict, which must be sustained if there is substantial evidence to support it. After reaffirming this long established rule in *Chicago, Rock Island & Pacific Railway Company* v. *Manus,* 193 Ark. 397, 100 S. W. 2d 258, this Court said: "We have also many times held that this Court must give to circumstances in proof, their highest probative value in favor of the appellee, and indulge every inference which is reasonably deducible from them in support of the jury's finding. *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798; *Ft. Smith Traction Co.* v. *Oliver,* 185 Ark. 227, 46 S. W. 2d 647; *Arkansas Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. 2d 45; *Union Securities Co.* v. *Taylor,* 185 Ark. 737, 48 S. W. 2d 1100; *St. Louis S. F. Ry. Co.* v. *Hall,* 182 Ark. 476, 32 S. W. 2d 440."

Appellee testified that he was a private, first class, in the United States Army and was returning from a furlough to his base in Roswell, New Mexico, on the night of June 30, 1945, when he boarded Rock Island Train No. 111 at Memphis, Tennessee. The car in which appellee was traveling was an old type combination passenger coach and baggage car. The train was crowded and appellee had no seat. About 2:00 a. m., appellee

began to get sleepy and requested a trainman to find him a seat. At the direction of this trainman, appellee was taken from the passenger compartment to the baggage compartment and directed to sit upon a stool furnished by the trainman. The appellee went to sleep on the stool and remembered nothing further until he was in the Camp Chaffee hospital. He saw no one else in the baggage compartment when he and the trainman entered it. Some of the lights in the passenger compartment had been turned off, but he paid no attention to the lights in the baggage compartment.

Hayden Walker, an employee of the railway company, was riding on a pass ("dead heading") to Blue Mountain, a small station in Logan county, Arkansas, about one and one-half miles beyond the point where appellee was later found. He was sitting with the conductor when he heard the head brakeman tell other trainmen that the negro soldier had fallen off the train about one and one-half miles east of Blue Mountain. After leaving the train at Blue Mountain, this witness, with the assistance of a deputy sheriff and another, found appellee lying in a ditch about 20 or 25 feet from the south side of the railway track. The frames of appellee's glasses were found about 2 feet from the track. Appellee was unconscious and remained in the ditch about one and one-half hours. A doctor was summoned and appellee was identified by furlough papers found on his person. The provost marshal at Camp Chaffee, near Ft. Smith, Arkansas, was notified and appellee was taken to the camp hospital in an army ambulance. The trainmen of appellant had no knowledge of the assistance rendered by Walker. The train which appellee was traveling met the "Rocket," another passenger train, at Blue Mountain. This train and a freight train had passed the place of injury when appellee was found. At the time of the accident, train No. 111 was traveling downgrade at a speed of 50 miles per hour and had emerged from a curve about a train's length from the point where appellee was found.

There was other evidence that the weather was warm and both side doors of the baggage compartment were open. There was a conflict between the testimony of the trainmen as to whether the train stopped before it reached Blue Mountain. The conductor testified that he gave no stop signal and that the train did not stop until it reached Blue Mountain. He also testified that he

arranged with the conductor of the Rocket for the latter to pick up appellee and take him to a hospital, if he was still alive. This was not done. He later received a wire from the conductor of the Rocket stating that they were unable to find appellee.

The head brakeman and another employee of the railway company, who was riding on a pass, testified that they were in the west end of the baggage compartment about 3:00 a. m. and saw appellee arise from his seat in the passenger compartment and walk directly toward them until he reached a point opposite the opening in the baggage car when he suddenly turned and walked out the side door of the baggage compartment. The trainmen also testified that appellee occupied a seat in the passenger compartment and that there were no passengers standing in the train. They also testified that no fare paying passengers were allowed in the baggage compartment.

Appellants insist that appellee was relying on the doctrine of *res ipsa loquitur* which, it is argued, does not apply because it must be concluded that the accident and injuries sustained might as plausibly have resulted from negligence on the part of the passenger, as the carrier, under the rule announced in *Price v. St. Louis, Iron Mountain & Southern Railway Company,* 75 Ark. 479, 88 S. W. 575, 112 Am. St. Rep. 79. But appellee did not proceed under the doctrine of *res ipsa loquitur*. He specifically alleged negligence on the part of an employee of the railway company in directing him to occupy an unusual and dangerous position in the baggage compartment, which was being operated with open doors. The case was submitted to the jury under the conflicting testimony that was adduced on the specific acts of negligence

thus charged and under instructions which are not challenged.

It is also contended that there is nothing in the testimony to indicate any negligence on the part of the employees of the railway company. The evidence presented a disputed question of fact as to whether appellee was directed to occupy an unusual and dangerous place in the baggage compartment, as he testified, or whether he voluntarily or negligently arose from a seat in the passenger compartment and walked out the side door of the baggage compartment, as the railway employees testified. It was the province of the jury to weigh the evidence and pass upon its truthfulness. When the facts and circumstances in evidence are viewed in the light most favorable to appellee, we think it was substantial and sufficient to go to the jury upon the issue of appellants' negligence. This issue, as well as the issue of appellee's contributory negligence, was submitted to the jury under proper instructions, and the trial court properly overruled appellants' request for an instructed verdict.

Appellants contend that, since appellee was a soldier, he sustained no loss of time, or money, and incurred no doctor bills, and that the verdict is, therefore, grossly excessive. Appellee is 22 years of age and testified that his shoulder, wrist and three fingers were fractured. There were other bruises and cuts over his body. The fractured wrist and fingers resulted in a limitation in the use of his left hand which still existed at the time of the trial, and rendered it impossible for him to pursue his duties as a mechanic. The first finger of his left hand was permanently injured and rendered useless. He remained in the hospital 10 days and suffered much pain. The jury observed the results of appellee's injuries, and the limitation of the use of his hand and fingers was demonstrated before the jury. Appellants offered no proof to contradict the testimony of appellee on the extent of his injuries.

Appellants also contend that the failure of appellee to produce the testimony of the army physicians who

treated his injuries raises a presumption that such testimony would have been unfavorable to appellee and would not have substantiated his claim for injuries. Appellants rely on the rule announced in *Rutherford v. Casey,* 190 Ark. 79, 77 S. W. 2d 58, as follows: "The failure to produce evidence within the party's control raises the presumption that, if produced, it would operate against him, and every intendment will be in favor of the opposite party." The proof in the case at bar does not show whether the testimony of these army doctors was available to appellee, and it cannot be said that such evidence was within his control under the aforementioned rule.

We are unable to say that the amount of the verdict demonstrates such bias and passion on the part of the jury as to make it grossly excessive, and call for a reversal or modification of the judgment.

No error appearing, the judgment is affirmed.